1 | EILEEN M. DECKER
United States Attorney
2 | ROBERT E. DUGDALE
Assistant United States Attorney
3 | Chief, Criminal Division
KERI CURTIS AXEL (Cal. Bar No. 186847)
4 | Assistant United States Attorney
Major Frauds Section
5 |   1100 United States Courthouse
312 North Spring Street
6 |   Los Angeles, California 90012
Telephone:   (213) 894-5421
7 |   Facsimile:   (213) 894-6269
E-mail:   Keri.Axel@usdoj.gov
8 |
Attorneys for Plaintiff
9 | UNITED STATES OF AMERICA

```
                FILED
         CLERK, U.S. DISTRICT COURT

              SEP -8 2015

      CENTRAL DISTRICT OF CALIFORNIA
      BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

COAST PRODUCE, INC.

Defendant.

No. CR 15-**CR15-0479**

**DEFERRED PROSECUTION AGREEMENT**

**FILED UNDER SEAL**

1.    This Deferred Prosecution Agreement (the "Agreement") is entered into between the United States Attorneys' Office for the Central District of California ("USAO") and defendant Coast Produce, Inc. ("Coast"), by its undersigned representatives, pursuant to authority granted by Coast's Board of Directors.

2.    This Agreement is entered into to resolve the USAO's criminal investigation of Coast's conduct with respect to two contracts between Coast and the Department of Defense entered into in or about 2008 for the distribution of produce to military bases and commissaries.

## I.    Criminal Information and Acceptance of Responsibility

3.    Coast acknowledges and agrees that the USAO will file the criminal Information in the form attached as Attachment A, in the United States District Court for

1    the Central District of California. The Information charges Coast with knowingly

2    altering or falsifying records, in violation of Title 18, United States Code, Section 1519.

3    In so doing, Coast: (a) knowingly waives its right to indictment on this charge, as well

4    as all rights to a speedy trial pursuant to the Sixth Amendment to the United States

5    Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal

6    Procedure 48(b); (b) knowingly waives, for purposes of this Agreement and any charges

7    brought by the USAO  arising out of the conduct described in the Statement of Facts

8    attached as Attachment B, any objection with respect to venue in the Central District of

9    California; and (c) consents to the filing of the Information, as provided under the terms

10    of this Agreement, in the United States District Court for the Central District of

11    California.

12        4.      Coast admits, accepts, and acknowledges that it is responsible under United

13    States law for the acts of its officers, directors, employees, and agents as charged in the

14    Information and as set forth in the Statement of Facts, which are incorporated herein by

15    reference, and that the allegations in Information and the facts described in the Statement

16    of Facts are true and accurate.  Should the USAO pursue the prosecution that is deferred

17    by this Agreement, Coast stipulates to the admissibility of the Statement of Facts in any

18    proceeding, including any trial, guilty plea, or sentencing proceeding, and will not

19    contradict anything in the Statement of Facts at any such proceeding.  Coast's entry into

20    this Agreement does not constitute an admission that it is guilty of the offense charged in

21    the Information.

22    **II.      Term of the Agreement**

23        5.      This Agreement is effective for a period beginning on the date on which the

24    Information is filed and ending two (2) years from that date (the "Term").  Coast agrees,

25    however, that, in the event the USAO determines, in its sole discretion, that Coast has

26    knowingly violated any provision of this Agreement, an extension or extensions of the

27    term of the Agreement may be imposed by the USAO, in its sole discretion, for up to a

28    total additional time period of one year, without prejudice to the USAO's right to

1   proceed as provided in paragraphs 20 through 23 below.  Any extension of the

2   Agreement extends all terms of this Agreement, including the terms of the reporting

3   requirements in paragraphs 7, 8, and 10-12, for an equivalent period.  Conversely, in the

4   event the USAO finds, in its sole discretion, that there exists a change in circumstances

5   sufficient to eliminate the need for the reporting requirements in paragraphs 7, 8, and 10,

6   and that the other provisions of this Agreement have been satisfied, the Term of the

7   Agreement may be terminated early.

8   **III.**   **Relevant Considerations**

9        6.    The USAO enters into this Agreement based on the individual facts and

10   circumstances presented by this case and Coast.  Among the factors considered were the

11   following: (a) the nature and seriousness of the offense conduct, including the risk of

12   harm; (b) Coast's cooperation with the USAO, including voluntarily making employees

13   available for interviews, and collecting, analyzing, and organizing voluminous evidence

14   and information for the USAO; (c) Coast's remedial actions and agreement to enhance

15   its compliance program and compliance personnel, including ensuring that its

16   Compliance and Ethics Program satisfies the elements set forth in Attachment D to this

17   Agreement; (d) Coast's willingness to settle any and all civil claims against Coast by the

18   USAO and to promptly pay a substantial settlement amount, as provided by the Civil

19   Settlement Agreement attached as Attachment C to this Agreement; (e) Coast's

20   willingness to acknowledge and accept responsibility for the actions of its management

21   as charged in the Information and as set forth in the Statement of Facts; and (f) the

22   potential substantial collateral consequences to Coast, its owners, management, and

23   employees resulting from a criminal conviction of Coast.

24   **IV.**   **Future Cooperation, Disclosure Requirements, and Remedial Measures**

25        7.    During the Term of the Agreement, should Coast learn of credible evidence

26   or allegations that Coast, including any of its employees acting within the scope of their

27   employment, violated any United States federal law or regulation relating to any

28   government contract, made any false statement or claim to the United States, or provided

1   any false document to the United States, Coast shall promptly report such evidence or
2   allegations to the USAO.

3       8.      Coast shall also promptly notify the USAO of any criminal, civil,
4   administrative or regulatory investigation, inquiry, or action, with respect to Coast or any
5   of its directors, officers, employees, consultants, representatives, and agents, related to
6   any contract or business relationship between any federal government entity and Coast,
7   to the extent permitted by the agency conducting the investigation or action and
8   applicable law.

9       9.      Coast agrees to establish and maintain a Compliance and Ethics Program
10   that is designed to prevent and detect violations of Title 18, United States Code, Sections
11   286, 287, 371, 1001, 1505, and 1519, as well as violations of the Federal Acquisition
12   Regulations ("FAR"), and comports with the criteria set forth in Section 8B2.1 of the
13   United States Sentencing Guidelines.  The specific steps that Coast has agreed to take to
14   implement the Compliance and Ethics Program are set forth in Attachment D, which is
15   incorporated here by reference.

16       10.     Coast agrees that it will provide a written report to the USAO annually
17   during the Term of the Agreement regarding its remediation and implementation of the
18   Compliance and Ethics Program.  Such reports must include specific and detailed
19   accounts of Coast's compliance implementation and improvements, and must identify
20   any potential or actual FAR violation that has come to the attention of Coast during the
21   reporting period and how Coast addressed the FAR matter.  Coast's failure to provide a
22   timely and complete report may result in the USAO, in its sole discretion, extending the
23   Term of the Agreement for an additional period of up to one year.

24       11.     Coast shall cooperate fully with the USAO with respect to any inquiries the
25   USAO may make concerning Coast's compliance with this Agreement, implementation
26   of the Compliance and Ethics Program, and any other matter about which Coast is
27   required to report or provide notice to the USAO.  Coast agrees that its cooperation shall
28   include, but not be limited to, the following: (a) truthfully and accurately disclosing all

4

1  factual information requested by the USAO; (b) providing any document, record
2  (including e-mail), or other tangible evidence in Coast's possession or control about
3  which the USAO may inquire; (c) designating knowledgeable employees, agents, or
4  attorneys, to provide the requested information and materials to the USAO; and (d) using
5  its best efforts to make available for interviews or testimony present or former officers,
6  directors, employees, agents, and consultants of Coast and to identify to the USAO those
7  witnesses who, to the knowledge of Coast, have material information.  Nothing in this
8  Agreement shall be construed, however, to require Coast to produce any information,
9  testimony, document, records, or tangible evidence that is protected by the attorney-
10 client privilege or the work product immunity doctrine.

11       12.    Thirty (30) days prior to the end of the Term of the Agreement, Coast will
12 provide to the USAO the following written certifications on behalf of Coast:

13              a.    A written certification signed by Coast's Compliance Officer
14                    attesting that Coast has fully implemented and maintained the Compliance
15                    and Ethics Program; and

16              b.    A written certification signed by Coast's Chief Executive Officer and
17                    Chief Financial Officer attesting that Coast has met its disclosure
18                    obligations pursuant to paragraphs 7 and 8 of this Agreement.

19 Each such certification will be deemed a material statement and representation by Coast
20 to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will
21 be deemed to have been made in the Central District of California.

22 **V.    Payment of Civil Settlement Amount**

23       13.    Pursuant to the Civil Settlement Agreement to be executed concurrently
24 herewith in the form attached hereto as Attachment C, Coast agrees to pay to the United
25 States a settlement amount of $4 million in accordance with the terms set forth in the
26 Civil Settlement Agreement.  Coast and the USAO agree that the amount of such
27 settlement amount is appropriate given the facts and circumstances of this case,
28 including the nature and scope of Coast's conduct, and Coast's ability to pay.  The $4

1  million settlement amount is final and shall not be refunded, offset, or reduced.  Nothing
2  in this Agreement shall be deemed an agreement by the USAO that $4 million represents
3  the maximum fine that may be imposed in any future criminal prosecution, and the
4  USAO is not precluded from arguing in any future prosecution that the court should
5  impose a high fine.

6  **VI.   Conditional Release from Liability**

7      14.    Subject to paragraphs 20- 23, the USAO agrees that, except as provided
8  herein, it will not bring any criminal or civil case against Coast or any of its assigns, with
9  respect to the conduct described in the Information and the Statement of Facts.  Further,
10  other than such actions as already have been initiated, the USAO agrees not to further
11  prosecute any present or former officer, director, employee, shareholder, agent,
12  consultant, contractor, or subcontractor of Coast for any violations of federal law
13  committed by them with respect to any of the conduct described in the Information and
14  Statement of Facts.

15      15.    Nothing in this Agreement shall preclude or limit the USAO or any
16  government entity from bringing a criminal prosecution against Coast or any present or
17  former officer, director, employee, shareholder, agent, consultant, contractor, or
18  subcontractor for making false statements, obstruction of justice, perjury, subornation of
19  perjury, witness tampering, or aiding and abetting or conspiring to commit such offenses,
20  based on the investigation leading to this Agreement, or Coast's conduct in performing
21  obligations under this Agreement.  Further, the USAO may use any information related
22  to the conduct described in the Statement of Facts against Coast:  (a) in a prosecution for
23  perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in
24  a prosecution or other proceeding relating to any crime of violence; or (d) in a
25  prosecution or other proceeding relating to a violation of any provision of Title 26 of the
26  United States Code.

27      16.    This Agreement does not provide any protection against prosecution for any
28  future conduct by Coast.

17.    This Agreement does not provide any protection against prosecution by the USAO for conduct that is not explicitly referenced in the Information or the Statement of Facts.

**VII.   Deferred Prosecution**

18.    In consideration of (a) the past and future cooperation of Coast described in paragraphs 6, 7, 8, and 11 above; (b) Coast's payment of a civil settlement amount of $4 million; and (c) Coast's implementation and maintenance of remedial measures as described in paragraphs 9 and 10 above, the USAO agrees that any prosecution of Coast for the conduct set forth in the Information and Statement of Facts, be and hereby is deferred for the Term of this Agreement.

19.    The USAO further agrees that if Coast fully complies with all of its obligations under this Agreement, the USAO will not continue the criminal prosecution against Coast described in paragraph 3 and, at the conclusion of the Term, this Agreement shall expire.  Within thirty (30) days of the Agreement's expiration, the USAO shall seek dismissal with prejudice of the Information filed against Coast described in paragraph 3, and agrees not to file charges in the future against Coast based on the conduct described in the Information and the Statement of Facts.

**VIII.   Breach of the Agreement**

20.    If during the Term of this Agreement Coast (a) commits any felony under United States federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to fulfill the reporting and compliance obligations set forth in paragraphs 7 through 11 of this Agreement; or (d) otherwise fails specifically to perform or to fulfill completely each of Coast's obligations under the Agreement, the USAO may declare this Agreement breached.  Coast shall thereafter be subject to prosecution for any federal criminal violation of which the USAO has knowledge, including, but not limited to, the charge in the Information described in paragraph 3, which may be pursued by the USAO in the United States District Court for the District of California, or any other appropriate venue.

1   Determination of whether Coast has breached the Agreement and whether to pursue
2   prosecution of Coast shall be in the USAO's sole discretion.  Any such prosecution may
3   be premised on information, including documents, records, and tangible things, provided
4   by Coast.  Any such prosecution relating to the conduct described in the Information, the
5   Statement of Facts, or relating to conduct known to the USAO prior to the date on which
6   this Agreement was signed that is not time barred by the applicable statute of limitations
7   on the date of the signing of this Agreement may be commenced against Coast,
8   notwithstanding the expiration of the statute of limitations, between the signing of this
9   Agreement and the expiration of the Term (including any extensions thereof) plus one
10  (1) year.  Thus, by signing this Agreement, Coast agrees that the statute of limitations
11  with respect to any such prosecution that is not time-barred on the date of the signing of
12  this Agreement shall be tolled for the Term plus one year.

13        21.    In the event the USAO determines that Coast has breached this Agreement,
14  the USAO agrees to provide Coast with written notice of such breach prior to instituting
15  any prosecution resulting from such breach.  Within thirty (30) days of receipt of such
16  notice, Coast shall have the opportunity to respond to the USAO in writing to explain the
17  nature and circumstances of such breach, as well as the actions Coast has taken to
18  address and remediate the situation, which explanation the USAO shall consider in
19  determining whether to pursue prosecution of Coast.

20        22.    In the event that the USAO determines that Coast has breached this
21  Agreement: (a) all statements made by or on behalf of Coast to the USAO or to the
22  Court, including the attached Statement of Facts, all testimony given by Coast or any
23  officer, director, employee, or agent of Coast before a grand jury, a court, or any
24  tribunal, and all business records of Coast provided to the USAO, whether prior or
25  subsequent to this Agreement, and any evidence derived from such statements,
26  testimony, and records, shall be admissible in evidence in any and all criminal
27  proceedings brought by the USAO against Coast; (b) Coast shall not assert any claim
28  under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of

1  Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule
2  that any such statements or testimony made by or on behalf of Coast prior or subsequent
3  to this Agreement, or any evidence derived therefrom, should be suppressed or is
4  inadmissible; and (c) Coast waives and gives up all defenses based on any claim of pre-
5  indictment delay with respect to such action.  The decision whether conduct or
6  statements of any current director, officer, or employee, or any person acting on behalf
7  of, or at the direction of, Coast, will be imputed to Coast for the purpose of determining
8  whether Coast has violated any provision of this Agreement shall be in the sole
9  discretion of the USAO.

10      23.    Coast acknowledges that the USAO has made no representations,
11 assurances, or promises concerning what sentence may be imposed by the Court if Coast
12 breaches this Agreement and this matter proceeds to judgment.  Coast further
13 acknowledges that any such sentence is solely within the discretion of the Court and that
14 nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

15 **IX.    Sale or Merger of Company**

16      24.    Except as may otherwise be agreed by the parties hereto in connection with
17 a particular transaction, Coast agrees that in the event it sells, merges, or transfers all or
18 substantially all of its business operations as they exist as of the date of this Agreement,
19 whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in
20 any contract for sale, merger, or transfer a provision binding the purchaser, or any
21 successor in interest thereto, to the obligations described in this Agreement.

22 **X.     Public Filings & Statements**

23      25.    Coast and the USAO agree that, upon submission of this Agreement
24 (including the attachments hereto) to the Court, the Agreement (and its attachments)
25 shall be filed publicly in the United States District Court for the Central District of
26 California.

27      26.    Coast expressly agrees that it shall not, through present or future attorneys,
28 officers, directors, employees, agents, or any other person authorized to speak for Coast

make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by Coast set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of Coast described below, constitute a breach of this Agreement, and Coast thereafter shall be subject to prosecution as set forth in paragraphs 20 through 22 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to Coast for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the USAO. If the USAO determine that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the USAO shall so notify Coast, and Coast may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. Coast shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Coast in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of Coast.

27.    The USAO agrees that, if requested to do so, it will bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of Coast's cooperation and remediation. By agreeing to provide this information to such authorities, the USAO is not agreeing to advocate on behalf of Coast, but rather is agreeing to provide facts to be evaluated independently by such authorities.

**XI.    Miscellaneous Provisions**

28.    This Agreement is binding on Coast and the USAO but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other

1   authorities, although the USAO will bring the cooperation of Coast and its compliance

2   with its other obligations under this Agreement to the attention of such agencies and

3   authorities if requested to do so by Coast.  To the extent Coast's compliance with this

4   Agreement so requires, Coast agrees to ensure that any subsidiary or successor company

5   or assign complies with the requirements and obligations set forth in this Agreement, to

6   the full extent permissible under locally applicable laws and regulations, and the

7   instructions of local regulatory agencies.

8        29.    Any notice or report to the USAO under this Agreement shall be given by

9   personal delivery, overnight delivery by a recognized delivery service, or registered or

10  certified mail, addressed to:

11            Chief, Major Frauds Section
             United States Attorney's Office, Central District of California
12           312 N. Spring Street, 11th Floor
             Los Angeles, CA 90012
13

14  Notice shall be effective upon actual receipt by the USAO.

15       30.    This Agreement may be executed in one or more counterparts, each of

16  which shall be considered effective as an original signature.  Further, all facsimile and

17  digital images of signatures shall be treated as originals for all purposes.

18       31.    This Agreement is covered by the laws of the United States.  The USAO

19  and Coast agree that exclusive jurisdiction and venue for any dispute arising under this

20  Agreement is in the United States District Court for the Central District of California.

21

22

23

24

25

26

27

28

11

32.     This Agreement, together with the Civil Settlement Agreement attached as Exhibit C and the letter from the United States Attorney's Office for the Central District of California to set forth all the terms of the agreement between Coast and the USAO. No amendments, modifications or additions to this Agreement or its exhibits shall be valid unless they are in writing and signed by the USAO, the attorneys for Coast, and a duly authorized representative of Coast.

AGREED AND ACCEPTED

FOR THE UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:

EILEEN M. DECKER
United States Attorney

LAWRENCE MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


KERI CURTIS AXEL                          September 1, 2015
Assistant United States Attorney          Date

Attorneys for Plaintiff
UNITED STATES OF AMERICA


FOR COAST PRODUCE, INC.:




_____          _____
JOHN DUNN
Authorized Representative of Coast Produce, Inc.   Date




_____          _____
JANET LEVINE                        Date
CROWELL MORING LLP
Counsel For Coast Produce, Inc.

12

1    32.    This Agreement, together with the Civil Settlement Agreement attached as

2    Exhibit C and the letter from the United States Attorney's Office for the Central District

3    of California to set forth all the terms of the agreement between Coast and the USAO.

4    No amendments, modifications or additions to this Agreement or its exhibits shall be

5    valid unless they are in writing and signed by the USAO, the attorneys for Coast, and a

6    duly authorized representative of Coast.

7    AGREED AND ACCEPTED

8
9    FOR THE UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA:

10
11   EILEEN M. DECKER
     United States Attorney

12   LAWRENCE MIDDLETON
     Assistant United States Attorney
13   Chief, Criminal Division

14

15   _____         _____
16   KERI CURTIS AXEL                          Date
     Assistant United States Attorney
17
18   Attorneys for Plaintiff
     UNITED STATES OF AMERICA
19
20   FOR COAST PRODUCE, INC.:

21
22   _____         SEPT 1, 2015
23   JOHN DUNN
     Authorized Representative of Coast Produce, Inc.   Date
24
25   _____         August 31, 2015
26                                            Date
27   JANET LEVINE
     CROWELL MORING LLP
28   Counsel For Coast Produce, Inc.

                          12

1
2
3
4

_____          8-31-15
PIO KIM, ESQ.                             Date
LIM RUGER & KIM LLP
Counsel For Coast Produce, Inc.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13

**Acknowledgment on Behalf of Coast Produce, Inc.**

I, John Dunn, the duly authorized representative of Coast Produce, Inc., hereby expressly acknowledge the following:

I have read this Agreement and carefully reviewed every part of it with outside counsel for Coast Produce, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement and the Civil Settlement Agreement attached as Exhibit C. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the President for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

_____          _____SEPT. 1, 2015_____
JOHN DUNN                                                      Date
Authorized Representative of Coast Produce, Inc.
Pursuant to Corporate Authorization
attached as Attachment E hereto

14

**Acknowledgment by Counsel for Coast Produce**

1       I am counsel for Coast Produce, Inc. (the "Company") in the matter covered by
2   this Agreement. In connection with such representation, I have examined relevant
3   Company documents and have discussed the terms of this Agreement with the Company
4   Board of Directors. Based on our review of the foregoing materials and discussions, I
5   am of the opinion that the representative of the Company has been duly authorized to
6   enter into this Agreement on behalf of the Company and that this Agreement has been
7   duly and validly authorized, executed, and delivered on behalf of the Company and is a
8   valid and binding obligation of the Company. Further, I have carefully reviewed the
9   terms of this Agreement with the Board of Directors and the President of the Company.
10  I have fully advised them of the rights of the Company, of possible defenses, of the
11  Sentencing Guidelines' provisions and of the consequences of entering into this
12  Agreement. To my knowledge, the decision of the Company to enter into this
13  Agreement, based on the authorization of the Board of Directors, is an informed and
14  voluntary one.
15
16  August 31, 2015
17  DATE                              JANET LEVINE, ESQ.
18                                    CROWELL & MORING
19                                    Counsel for Coast Produce, Inc.
20  8-31-15
21  DATE                              PIO KIM, ESQ.
22                                    LIM RUGER & KIM LLP
23                                    Counsel for Coast Produce, Inc.
24
25
26
27
28

15

ATTACHMENT E

CERTIFICATE OF CORPORATE RESOLUTION

WHEREAS, Coast Produce, Inc. (the "Company") has been engaged in discussions with the United States Attorney's Office, Central District of California (the "USAO") regarding issues arising in relation to false claims, false statements to government officials, and obstruction of justice concerning two contracts between Coast and the Department of Defense entered into in or about 2008 for the distribution of produce to military bases and commissaries; and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a certain agreement with the USAO; and

WHEREAS, the Company's President, John Dunn, together with outside counsel for the Company, have advised the Board of Directors of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such agreement with the USAO;

Therefore, the Board of Directors has RESOLVED that:

1.     The Company (a) acknowledges the filing of the one-count Information charging the Company with a violation of 18 U.S.C. § 1519; (b) waives indictment on such charges and enters into a deferred prosecution agreement with the USAO; and (c) agrees concurrently to settle the related civil action, and to pay the amount of $4,000,000 in conjunction with a settlement of such civil action;

2.     The Company accepts the terms and conditions of this Agreement, including, but not limited to:  (a) a knowing waiver of its rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver, for purposes of this Agreement and any charges brought by the United States arising out of the conduct described in the attached Statement of Facts, of any objection with respect to venue in the Central District of California; (c) its consent to the filing of the Information,

1

as provided under the terms of this Agreement, in the United States District Court for the Central District of California; (d) a knowing waiver of any defenses based on the statute of limitations for any prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the USAO prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement; and (e) a knowing tolling of any applicable statute of limitations for the duration of the Term plus one year.

3.    The President of Company, John Dunn, is hereby authorized, empowered and directed, on behalf of the Company, to execute the Deferred Prosecution Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as Mr. Dunn may approve;

4.    The President of Company, John Dunn, is hereby authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5.    All of the actions of the President of Company, John Dunn, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

Date: August 31, 2015       By: _____

Corporate Secretary
Coast Produce, Inc.

2

# ATTACHMENT A

1

ATTACHMENT A:   INFORMATION

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  | UNITED STATES OF AMERICA,          No. CR 15-

11  |          Plaintiff,               I N F O R M A T I O N

12  |          v.                       [18 U.S.C. § 1519:
                                        Alteration or Falsification of
13  | COAST PRODUCE, INC.,              Records]

14  |          Defendant.

15

16  The United States Attorney charges:

17                   [18 U.S.C. § 1519]

18  On or about February 17, 2010, in Los Angeles County, within the

19  Central District of California, and elsewhere, defendant COAST

20  PRODUCE, INC. ("defendant"), knowingly altered, destroyed, concealed,

21  covered up, falsified, and made false entries in records, documents,

22  and tangible objects with the intent to impede, obstruct, and

23  influence the investigation and proper administration of a matter

24  within the jurisdiction of a department and agency of the United

25  States, specifically, the United States Department of Defense

26  ("DoD"), and in relation to and contemplation of such a matter.

27  Specifically, defendant, a produce company that had contracts to

28  provide produce to the DoD, presented to the DoD a letter and 40

1   attached vendor invoices, in which it stated and represented that the

2   invoices evidenced the prices that defendant had paid to obtain the

3   produce it provided to the DoD when, in fact, as defendant then well

4   knew, at least 32 of the 40 attached invoices were not the true

5   invoices for the produce that defendant had sold to the DoD and

6   reflected higher prices than defendant actually had paid.

7                           EILEEN M. DECKER
                            United States Attorney
8

9

10
                            ROBERT E. DUGDALE
11                          Assistant United States Attorney
                            Chief, Criminal Division
12
                            RICHARD E. ROBINSON
13                          Assistant United States Attorney
                            Chief, Major Frauds Section
14
                            RANEE A. KATZENSTEIN
15                          Assistant United States Attorney
                            Deputy Chief, Major Frauds Section
16
                            KERI CURTIS AXEL
17                          Assistant United States Attorney
                            Major Frauds Section
18

19

20

21

22

23

24

25

26

27

28

                                  2

# ATTACHMENT B

**Attachment B: Statement of Facts**

## I.    COAST AND THE RELEVANT DoD CONTRACTS

1.      Coast Produce, Inc. ("Coast") is a Los Angeles-based produce distribution company and a closely-held California corporation.

2.      In January 2008, Coast entered into two contracts with the military contracting agency within the Department of Defense ("DoD"), called the Defense Logistics Agency Troop Support ("DLATS") (formerly known at the Defense Supply Center Philadelphia ("DSCP")). Under these contracts, Coast would supply fresh fruits and vegetables to military bases and Navy ships in the Los Angeles and San Diego zones.  Except for specifying different geographical areas, the material terms of the two contracts are identical, and are hereinafter referred to as one contract ("the Contract" or the "2008 Contract").  Coast supplied produce under the Contract from February 2008 to January 2014.

3.      The 2008 Contract was an "Indefinite Quantity Contract (IQC) with an Economic Price Adjustment based on cost of materials."  Under the Economic Price Adjustment clause ("EPA"), the prices that Coast charged DLATS consisted of two components:  (1) the "delivered price" and (2) the "distribution price."  The Contract defined the distribution price as "the firm fixed price portion of the contract unit price, offered as a dollar amount per unit of issue, which represents all elements of the contract price other than the delivered price.  The distribution price typically covers the Contractor's [General & Administrative expenses, overhead, packaging and transportation costs] plus profit . . . ."  Based on Coast's bid, the distribution price was fixed at $1.50 per case or package of produce.

4.      The Contract defined the "delivered price" as:

> [T]he current net price per unit charged to the Contractor for supplying the Contractor a representative weekly requirement for an item covered in the ordering catalog to the Contractor's distribution point . . . . The last (most recent) vendor price for an item should usually meet this definition if covering a substantial quantity of the Contractor's deliveries for the subsequent weekly period . . . .

5.      During the relevant period, Coast offered DLATS a menu of 100 or more fresh fruit and vegetable items (e.g., apples, bananas, broccoli).  On each Wednesday, employees in Coast's military pricing group would send DLATS produce prices covering the following Sunday-Saturday period.  Starting in or about 2008 and thereafter, Coast used price quotes rather than invoices from vendors to support the prices it submitted to DLATS.  In practice, employees working in the military group at Coast would obtain various vendor quotes daily and sometimes weekly, and use these quotes as a basis to set prices.  At the instruction of a Coast Senior Executive ("Senior Executive #1"), these employees generally would use the highest vendor quote that Coast had recently received to support the prices sent to DLATs.  Those prices, plus Coast's $1.50 fixed distribution price, were loaded onto an online ordering catalogue as the military's price to buy the produce.

6.      DLATS would post the menu on an internet-based ordering system, onto which individual military dining facilities and Navy ships could log on to order needed items.  Coast would consolidate the orders, fulfill them from its various suppliers and from its refrigerated storage warehouse, and deliver the orders by truck to the various military locations every few days.

7.      During the period of approximately 2009 to April 2010, two of Coast's vendors in fact regularly submitted to Coast quotes that were $2 higher than what these vendors intended to and did charge Coast.  One of the vendors faxed Coast, on a weekly basis, two sets of prices: one labeled "Military (Quote Faxed)," and the other labeled "Military Prices."  Per Senior Executive #1's instruction, when pricing produce for the government, Coast's military pricing group would use the "Military (Quote Faxed)" price, which was $2 higher per item than the "Military Prices" price.  However, this vendor in fact invoiced Coast at the lower "Military Prices" price.

## II.   PRICE VERIFICATION ANALYSIS

8.      In February 2010, J. Farfara, an employee in the Contract Administration & Compliance Division of DLATS, sent a letter to Senior Executive #1 indicating that DLATS was

conducting a "Price Verification Analysis." The letter asked Coast to provide vendor invoices, as well as freight costs and freight invoices for 40 specific items that the military had purchased and Coast had delivered under the 2008 Contract. The letter requested a response by February 17, 2010. The 40 items at issue (20 items for each of the 2008 Contract), were specified on a list ("the DLATS list"); for each item, the DLATS list identified DLATS' order number for the produce item, as well as the number for Coast's corresponding invoice to DLATS.

9. At all relevant times, Coast used an electronic produce inventory system that uniquely tracked each order and invoice, indicated the price at which the produce had been procured from the vendor, and the price at which such produce was sold. Thus, using the numbers that DLATS provided, Coast had the ability to provide DLATS the actual price at which it procured each item of produce specified on the DLATS list, and the correct vendor invoice.

10. On or about February 3, 2010, Senior Executive #1 forwarded the Price Verification Analysis request to six other Coast employees, including another Coast Senior Executive ("Senior Executive #2"), and Employee #1, who at that time was principally responsible for Coast's military pricing, and requested Employee #1's help in "researching and pulling invoices." Employee #1 understood that s/he was not looking for the actual vendor invoice corresponding to each item on DLATS list, but was looking for the highest invoices from around the relevant time to support the higher prices charged to DoD. Employee #1 prepared an initial draft spreadsheet that included vendor prices corresponding to each of the 40 items, and highlighted each instance in which the price difference between the vendor price and the price charged to DoD was greater than $1.50.

11. Senior Executive #1 then instructed Employee #1 to find other invoices to narrow the price difference. Employee #1 used Coast's proprietary system to look up, for each item specified on the DLATS list, the purchase order and invoice with the highest price s/he could find from the week prior to the military customer's requested delivery date. Employee #1 then created another spreadsheet in which, in most instances, she referenced different suppliers'

3

invoices with higher prices than in the first spreadsheet. This spreadsheet narrowed the price difference between Coast's costs and the prices charged to DoD.

12.     While Employee #1 was collecting data for the Price Verification Analysis, Senior Executive #2 instructed Employee #1 to look up certain of the 40 items on the DLATS list, add a $1.00 freight charge, take a screen shot of the purchase order reflecting the $1.00 freight charge, print it out, and then delete the freight charge. Employee #1 copied all of the invoices she used to fill out the spreadsheet, as well as the $1.00 freight charge purchase order s/he had just created, and provided those copies to Senior Executive #1.

13.     On February 17, 2010, Senior Executive #1 sent a response letter to J. Farfara at DLATS attaching various invoices and purchase orders purportedly corresponding to the 40 items identified on the DLATS list. At least 32 of the 40 invoices attached to Coast's response letter were not the genuine invoices from the actual vendors from which the particular produce shipped to the military had been procured, and did not reflect the actual prices paid by Coast. Thus, Coast submitted to DLATS invoices from different vendors than actually supplied the particular produce that the military purchased from Coast and, in most instances, overstated the price Coast paid for the military's produce. Coast also submitted to DLATS the ten $1.00 freight purchase orders that Employee #1 created at Senior Executive #2's direction.

# ATTACHMENT C

ATTACHMENT C: Settlement Agreement

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among: (1) the United States of America, acting through the United States Department of Justice and on behalf of the Defense Logistics Agency Troop Support ("DLATS," formerly known as the Defense Supply Center Philadelphia or DSCP) (collectively the "United States"); (2) Coast Produce Company ("Coast"); and (3) Kevin Driscoll ("Relator") (hereafter all collectively referred to as "the Parties" and each is a "Party"), through their authorized representatives.

I.

## RECITALS

A.     From January 2008 through January 2014 Coast supplied fresh fruits and vegetables to DLATS customers in the Los Angeles and San Diego areas pursuant to two contracts with DLATS, SPM300-08-D-P021 (Los Angeles zone) and SPM300-08-D-P020 (San Diego zone). Except for specifying different geographical areas, the material terms of the two contracts were identical and they are hereafter collectively referred to as the "Contract."

B.     On or about June 5, 2013, Relator filed his operative Third Amended Complaint in a *qui tam* action in the United States District Court for the Central District of California, captioned *United States ex rel. Kevin Driscoll v. Coast Produce Company, et al.*, no. SACV08-4406 DOC (SHx), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator's Third Amended Complaint names as defendants Coast and its majority owner John K. Dunn ("Dunn"). Relator's Third Amended Complaint alleges that from January 2008 through at least June

ATTACHMENT C: Settlement Agreement

2013 Coast knowingly overcharged the United States under the Contract by violating the Best Price Guarantee clause, "double dipping" the distribution fee authorized under the Contract, unbundling products to charge multiple distribution fees, inflating market pricing, and instructing certain vendors to "bid high" but "invoice low" on produce that Coast supplied under the Contract. The United States intends to intervene in the Civil Action as part of this civil settlement.

        C.     The United States contends that it has certain civil claims against Coast arising from Coast's actions under the Contract. Specifically, during the period from January 2008 through January 2014, the United States contends that:

        1.     In knowing violation of the Contract, Coast instructed two of its suppliers, Caldwell Fresh Foods and Continental Sales, to provide false $2-increased quotes, which Coast then submitted to DLATS as pricing support under the Contract; but Coast simultaneously instructed these two suppliers to actually invoice Coast at their regular lower prices, and Coast retained the difference;

        2.     In knowing violation of the Contract, Coast charged DLATS more than Coast's known fixed costs that Coast paid for bananas and pineapples under long-term fixed-price supply contracts that Coast had with Chiquita Fresh North America, L.L.C. for bananas, and with Dole Fresh Fruit Company for pineapples; and Coast retained the difference; and

        3.     In knowing violation of the Contract, Coast regularly submitted artificially high quotes to DLATS—typically from vendors from whom it had no intention of buying, and which quotes it knew or intended would exceed its actual

ATTACHMENT C: Settlement Agreement

costs—in order to set DLATS's payment rate; but Coast then actually purchased the items, as anticipated, at lower prices and kept the difference.

That conduct described in this Section I.C. is referred to below as the "Covered Conduct."

      D.     This Settlement Agreement is neither an admission of liability by Coast nor a concession by the United States that its claims are not well founded.

      E.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

II.

TERMS AND CONDITIONS

      1.     Coast shall pay to the United States $4,000,000 (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Central District of California. Coast shall pay the Settlement Amount no later than seven days after the Effective Date of this Agreement.

      2.     Coast shall pay to Relator $140,000 ("Relator's Payment") for reasonable expenses, attorney's fees, and costs by electronic funds transfer pursuant to written instructions to be provided by Relator's counsel. Coast shall pay the Relator's Payment no later than seven days after the Effective Date of this Agreement.

## ATTACHMENT C: Settlement Agreement

3.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Coast's full payment of the Settlement Amount, the United States releases Coast, together with its owners (Dunn the 54.8% owner, Cheri Dunn the 29.8% owner, Jessica Shepard the 7.7% owner, and Sarah Dunn the 7.7% owner), officers, directors, agents, and employees from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 5 below, and conditioned upon Coast's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Coast, together with its owners (Dunn the 54.8% owner, Cheri Dunn the 29.8% owner, Jessica Shepard the 7.7% owner, and Sarah Dunn the 7.7% owner), officers, directors, agents, and employees from any civil monetary claim the Relator has on behalf of the United States as to all claims raised by the Relator in the Civil Action, under the False Claims Act, 31 U.S.C. §§ 3729-3733 or otherwise.

5.      Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

          a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

          b.      Any criminal liability;

ATTACHMENT C: Settlement Agreement

c.      Except as explicitly stated in this Agreement, any administrative

liability, including the suspension and debarment rights of any

federal agency;

d.      Any liability to the United States (or its agencies) for any conduct

other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability for express or implied warranty claims or other

claims for defective or deficient products or services, including quality of goods and

services;

g.      Any liability for failure to deliver goods or services due; and

h.      Any liability for personal injury or property damage or for other

consequential damages arising from the Covered Conduct.

6.      Relator and his heirs, successors, attorneys, agents, and assigns shall not

object to this Agreement but agree and confirm that this Agreement is fair, adequate, and

reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  In

connection with this Agreement and this Civil Action, Relator and his heirs, successors,

attorneys, agents, and assigns agree that neither this Agreement, any intervention by the

United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal

of the Civil Action, shall waive or otherwise affect the ability of the United States to

contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and

3730(e), bar Relator from sharing in the proceeds of this Agreement.  Moreover, the

United States and Relator and his heirs, successors, attorneys, agents, and assigns agree

that they each retain all of their rights pursuant to the False Claims Act on the issue of the

ATTACHMENT C: Settlement Agreement

share percentage, if any, that Relator should receive of any proceeds of the settlement of his claim(s), and that no agreements concerning Relator share have been reached to date.

7.      Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Coast, and its owners, officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

8.      Coast has provided sworn financial disclosure statements and supporting materials ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement.  Coast warrants that the Financial Statements are complete, accurate, and current as of April 17, 2015.  If the United States learns of asset(s) in which Coast had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Coast on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $400,000 or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Coast previously undisclosed. Coast agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

9.      In the event that the United States, pursuant to paragraph 8 (concerning disclosure of assets), above, opts to rescind this Agreement, Coast agrees not to plead,

Page 6 of 13

## ATTACHMENT C: Settlement Agreement

argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 90 calendar days of written notification to Coast that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on July 2, 2015 (the date of the second mediation in this matter).

      10.    Coast waives and shall not assert any defenses Coast may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

      11.    Coast fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Coast has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, the Civil Action, the Contract, and/or the United States' investigation and prosecution of the Covered Conduct and/or the Civil Action and/or the Contract.

      12.    Coast fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Coast

ATTACHMENT C: Settlement Agreement

has asserted, could have asserted, or may assert in the future against the Relator, related

to the Covered Conduct, the Civil Action, the Contract and/or and the Relator's

investigation and prosecution of the Covered Conduct and/or the Civil Action and/or the

Contract.

    13.    a.    Unallowable Costs Defined: All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Coast, and its

present or former officers, directors, employees, shareholders, and agents in connection

with:

    (1)    the matters covered by this Agreement and any related plea
agreement;

    (2)    the United States' audit(s) and civil and any criminal
investigation(s) of the matters covered by this Agreement;

    (3)    Coast's investigation, defense, and corrective actions
undertaken in response to the United States' audit(s) and
civil and any criminal investigation(s) in connection with
the matters covered by this Agreement (including
attorney's fees);

    (4)    the negotiation and performance of this Agreement and any
plea agreement;

    (5)    the payment Coast makes to the United States pursuant to
this Agreement and any payments that Coast may make to
Relator, including costs and attorney's fees,

ATTACHMENT C: Settlement Agreement

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

        b.      Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Coast, and Coast shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

        c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Coast shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Coast or any of its subsidiaries or affiliates from the United States.  Coast agrees that the United States, at a minimum, shall be entitled to recoup from Coast any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Coast's books and records and to disagree with any calculations submitted by Coast or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Coast, or the effect of any such Unallowable Costs on the amount of such payments.

        14.      Coast agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, Coast shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  Coast further agrees to

ATTACHMENT C: Settlement Agreement

furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

15.     Coast warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Coast, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Coast was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

16.     This Agreement is intended to be for the benefit of the Parties only.

17.     Upon the United States' receipt of the Settlement Amount payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).  The Joint Stipulation of Dismissal will state that the action is being dismissed "subject to the terms of the Settlement Agreement," and will further provide that as to the United States

Page 10 of 13

ATTACHMENT C: Settlement Agreement

the Civil Action is being dismissed with prejudice only as to the Covered Conduct released in this Agreement, and without prejudice as to any other claims.  The Joint Stipulation of Dismissal will provide that as to the Relator the Civil Action is being dismissed with prejudice as to all claims.

18.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

20.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Central District of California.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

22.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This Agreement is binding on Coast's successors, transferees, heirs, and assigns.

ATTACHMENT C: Settlement Agreement

25.     This Agreement is binding on Relator's successors, transferees, heirs, and

assigns.

26.     Coast and Relator consent to the United States' disclosure of this

Agreement, and information about this Agreement, to the public.

27.     This Agreement is effective on the date of signature of the last signatory to

the Agreement (the "Effective Date" of this Agreement).  Facsimiles or electronic scans

of signatures shall constitute acceptable, binding signatures for purposes of this

Agreement.


THE UNITED STATES OF AMERICA

DATED: August 18, 2015  BY: _____
                                                   ABRAHAM MELTZER
                                                   Assistant United States Attorney
                                                   Central District of California

COAST PRODUCE COMPANY - DEFENDANT


DATED: _____ BY: _____
                                                   JOHN K. DUNN
                                                   Majority owner and director
                                                   of Coast Produce Company


DATED: _____ BY: _____
                                                   MARK TROY
                                                   CROWELL & MORING LLP
                                                   Counsel for Coast Produce Company

KEVIN DRISCOLL - RELATOR


DATED: _____ BY: _____
                                                   KEVIN DRISCOLL


Page 12 of 13

## ATTACHMENT C: Settlement Agreement

DATED: _____ BY: _____

                                    DONALD R. WARREN
                                    WARREN BENSON LAW GROUP
                                    Counsel for Relator Kevin Driscoll

# ATTACHMENT D

## ATTACHMENT D
## COMPLIANCE & ETHICS PROGRAM

1.      Coast Produce, Inc. ("Coast") will designate a senior corporate officer as Chief Compliance Officer.  Coast has represented to the government that it will designate James Chan, its H.R. officer, as the compliance officer.

2.      The Chief Compliance officer will undergo outside training in government contract compliance by October 20, 2015, as well as continuing education on a regular basis (no less often then annually).   In the event that the Chief Compliance Officer cannot attend the "Risk Mitigation Training for Government Contracting Professionals" seminar set for October 5-9, 2015, despite good faith efforts, Coast will notify the government and he will attend the next available seminar.

3.      The Chief Compliance Officer will report directly to Coast's board of directors.

4.      The Chief Compliance Officer's responsibilities will include the following:

a.      Review terms and conditions and certifications incorporated within any  government contracts held by Coast, currently or during the 24-month period covered by this agreement.

b. Assess Coast's compliance with "a" above.

c.      Review ongoing performance of government contracts and conduct internal audits which will include verifying, on a sample basis, that the correct documentation is being used to support cost, quantity, and price representations to the government and that such  original  documentation is being properly maintained and available for inspection by the government  for the duration required under the contracts.

d.      Implement all actions necessary to bring any non-compliant performance into compliance with the terms and conditions of government contracts, and promptly report those corrective actions and results to the board of directors.

e.     Supervise the process for responding to any government requested price verification analysis or audit and review the response for accuracy and completeness prior to its submission, including the supporting and/or referenced documents.

f.     Ensure that Coast complies with the mandatory disclosure provisions set for in Federal Acquisition Regulation Part 9, concerning reporting to the government's contracting officers and/or Department of Defense Inspector General.

g.     Review all of Coast's proposals for government contracts (or subcontracts or teaming arrangements) for compliance with the terms and conditions and certifications contained in the government's requests for proposals / solicitations.

h.     Review Coast's internal policies and handbooks to ensure compliance with the FAR requirements and state and local whistleblower protection laws.

i.     Ensure that all employees handling federal contracts undergo training on compliance with terms and conditions as well as ethics training, including the duty to report suspected wrongdoing and the ability to contact the Department of Defense of Inspector General "hotline," within 30 days of the attendance by the Chief Compliance Officer of the seminar described in paragraph 2 above, and thereafter no less often than annually.

5.     Coast will implement its own hotline service (via a third party) to encourage anonymous reporting of any suspected noncompliance, unethical actions or waste, fraud and abuse.